COPY
ORIGINAL FILED
07 NOV 15 AM 10:30
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x307
Fax: (415) 436-9683
Email: lbelenky@biologicaldiversity.org

John Buse (CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue No. 3
Chicago, IL 60637
Telephone: (323) 533-4416
Fax: (610) 885-2187
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiffs

E-filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

EMC

CALIFORNIA TROUT, INC.; CALIFORNIA-NEVADA CHAPTER OF THE AMERICAN FISHERIES SOCIETY; CENTER FOR BIOLOGICAL DIVERSITY; and FRIENDS OF THE RIVER,

Plaintiffs,

v.

DIRK KEMPTHORNE, Secretary of the Interior; and H. DALE HALL, Director, U.S. Fish and Wildlife Service,

Defendants.

Case No. CV 07 5798

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I. INTRODUCTION

1. This is an action for declaratory and injunctive relief brought by Plaintiffs California Trout, Inc. ("CalTrout"), the California-Nevada Chapter of the American Fisheries Society ("AFS California-Nevada"), the Center for Biological Diversity ("the Center"), and Friends of the River ("Friends") in connection with the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"). The Secretary of the Interior ("Secretary") and the Director of the United States Fish and Wildlife Service ("Director") have violated the ESA by failing to designate sufficient critical habitat for the Santa Ana sucker (*Catostomus santaanae*) to ensure the conservation and recovery of the species. 16 U.S.C. § 1533(a)(3). The Santa Ana sucker is a native freshwater fish species found in the Santa Ana River and the Los Angeles River Basins, and in the Santa Clara River, that has been listed as a "threatened" species by the Fish and Wildlife Service ("the Service"). This action seeks an order declaring that the Secretary and the Director have failed to designate sufficient critical habitat to provide for the conservation of the Santa Ana sucker, and compelling the Secretary and the Director to revise the critical habitat designation in a manner necessary to conserve the species. This action arises under and alleges violations under the ESA, 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g) (action arising under ESA citizen suit provision) and 28 U.S.C. §§ 1331 (federal question jurisdiction).

3. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because this civil action is brought against officers and employees of the United States acting in their official capacities and under the color of legal authority, as at least one Plaintiff resides in this judicial district, and as no real property is involved in this action.

4. Plaintiffs provided 60 days notice of their intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to each Defendant (or their predecessor) dated and sent by certified mail and facsimile on August 11, 2005, received via certified mail by the Secretary and the Director on August 18, and August 17, 2005, respectively. Plaintiff Center provided additional notice of its intent to file this suit by letter to each Defendant dated August

28, 2007. Neither Defendant responded to either notice of intent to sue nor have the Defendants remedied the alleged violations. Therefore, an actual controversy exists between the parties within the meaning on 28 U.S.C. § 2201. For all claims, Plaintiffs have exhausted all of the administrative remedies available to them.

**III. INTRADISTRICT ASSIGNMENT**

5. Assignment of this action to the San Francisco Division of this judicial district is proper because lead plaintiff California Trout, Inc., maintains its principal place of business in San Francisco County. *See* Local Rule 3-5(b), 3-2( c).

6. As defined in Local Rule 3-12(a), this case is related to California Trout, et al. v. Babbitt, et al., No. C 95-3961 SI (N.D. Cal.) and California Trout, et al. v. Norton, et al., No. C 97-3779 SI (N.D. Cal.). Plaintiffs will timely file an administrative motion to consider whether the cases should be related pursuant to Local Rule 3-12(b).

**IV. PARTIES**

7. Plaintiff CALIFORNIA TROUT, INC. ("CalTrout") is a non-profit conservation corporation organized in 1971 under the laws of the State of California with its principal place of business in San Francisco, California. CalTrout's mission is to protect and restore wild trout and other native fish species such as the Santa Ana sucker, to protect the waters that nurture these fish species throughout the State of California. CalTrout fulfills its mission by protecting freshwater wild trout habitat throughout California, and the native biodiversity associated with this riparian habitat, including the Santa Ana sucker. Prior to its decline and listing as a threatened species, the Santa Ana sucker shared habitat with wild trout throughout its range. In fulfilling its mission to protect freshwater habitat and its biodiversity, including native fishes, CalTrout has participated in stream restoration efforts in Los Angeles County along the West Fork of the San Gabriel River, which provides habitat for the Santa Ana sucker; participated in working groups, including the West Fork Working Group of the San Gabriel River, to manage the waters of the San Gabriel River by balancing flood control management with the health of native fishes; and assisted fisheries biologists with the collection of scientific information on the status and distribution of the Santa Ana sucker. CalTrout has been engaged in efforts to restore flows, improve habitat, and improve fish passage along the Santa Clara River.

CalTrout participates regularly in administrative processes and has commented to the Federal Energy Regulatory Commission on the effects of the re-licensing of Southern California Edison hydroelectric projects and other project on the native fish of the Santa Ana River and the Santa Clara River, including, in particular, the Santa Ana sucker. CalTrout has also commented to the United States Forest Service on Land Management Plans for the Angeles and San Bernardino National Forests, which include management efforts to protect water quality for native fishes, including the Santa Ana sucker, found in these National Forests. CalTrout members support the conservation of entire watersheds and all of their associated biodiversity, as well as the effective implementation and enforcement by government regulatory agencies of planning and conservation laws, like the Endangered Species Act, that relate to the protection of these watersheds and their native biodiversity. CalTrout represents over 6,000 recreational anglers, of whom more than 1,000 live within a one hour drive of the Santa Ana, San Gabriel, and Santa Clara Rivers and regularly utilize these riparian areas for fishing, photography, hiking and to seek aesthetic relief from the urban environments of Southern California.

8. Plaintiffs CALIFORNIA-NEVADA CHAPTER OF THE AMERICAN FISHERIES SOCIETY ("AFS California-Nevada") is the largest regional chapter of the American Fisheries Society ("AFS"), a non-profit professional society founded 135 years ago and dedicated to the protection and the promotion of fisheries and related sciences and to the conservation of fish, other aquatic resources and their habitat. AFS California-Nevada represents approximately 600 fisheries biologists and aquatic resource managers throughout the states of California and Nevada, one-quarter of whom live in Southern California within the range of the Santa Ana sucker and regularly enjoy this native fish for scientific, educational, recreational and aesthetic purposes. AFS California-Nevada fulfills its mission to protect fish and other aquatic resources and their habitat through the regular publication of newsletters and member publication in scientific journals, and through conferences, public outreach and education, litigation and lobbying efforts at the local, state and federal levels. AFS California-Nevada members also support the sound implementation by government regulatory agencies of environmental planning and conservation laws, including the ESA, that are intended to protect and enhance aquatic resources in a timely fashion throughout the states of California and Nevada. AFS California-Nevada wrote the petition for the listing of the Santa Ana sucker (and two other imperiled fish species) under

the ESA that was submitted to the Service in 1994, and has published articles on the decline of the Santa Ana sucker in its newsletter, alerting its members to the need for additional protections for this fish throughout its range. AFS California-Nevada members also have submitted letters to the California Department of Fish and Game and the United States Fish and Wildlife Service urging additional protections for the Santa Ana sucker and have commented on government agency actions likely to affect the continued health of this fish species and its long term well-being throughout its range.

9. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a non-profit corporation with offices in San Francisco, Los Angeles, San Diego, and Joshua Tree, California; Phoenix and Tucson, Arizona; Portland, Oregon; Silver City, New Mexico; and Washington, D.C. The Center is actively involved in species and habitat protection issues throughout North American and the Pacific. The Center has over 35,000 members throughout the southwestern United States, including many members who reside in Southern California in and near areas that serve as habitat for the Santa Ana sucker in the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins. The Center's members and staff include local residents with educational, scientific research, moral, spiritual and recreational interests in the Santa Ana sucker. The Center's members and staff also enjoy the biological, recreational and aesthetic values of the Santa Ana sucker. The Center, its members and staff have participated in efforts to protect and preserve the habitat essential to the continued survival of the Santa Ana sucker and use many of the waters where the species is present and which Plaintiffs allege were improperly excluded from the designated critical habitat. A Center staff member has also worked closely with the Santa Ana Sucker Conservation Team.

10. Plaintiff FRIENDS OF THE RIVER is a non-profit conservation group founded in 1973, incorporated under the non-profit laws of the State of California, with its principal place of business in Sacramento, California. Friends of the River is the largest and oldest statewide river conservation organization in California. Its mission is to preserve, protect and restore California's rivers, streams, watersheds and related biodiversity. Friends of the River has been involved in the listing of, and designation of critical habitat for, several threatened and endangered fish species in California, including the winter run chinook salmon, spring run chinook salmon, winter steelhead, Sacramento splittail, and Delta smelt. Friends of the River was one of the petitioners to list the Santa Ana sucker in

Southern California as an endangered species. Friends of the River has been involved in the protection and management of federally owned public lands in the Southern California region since 1988, with an emphasis on protecting rivers, streams, watersheds, water quality, aquatic habitat, and aquatic species. Friends of the River has over 7,000 members, many of whom live near the Santa Ana, San Gabriel, and Santa Clara Rivers and regularly utilize these riparian areas for fishing, photography, and hiking and to seek aesthetic relief from the urban environment.

11. Plaintiffs and their respective members live and/or work in communities near or in the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins. They use, on a continuing and ongoing basis, the habitat of the Santa Ana sucker for recreational, scientific, aesthetic, educational and conservation purposes, including, but not limited to, recreational fishing, boating, swimming, aesthetic enjoyment, photography, nature study, and wildlife observation. They intend to continue to do so on an ongoing basis in the future. Plaintiffs and their members derive recreational, aesthetic, scientific, education and conservation benefit and enjoyment from the existence of the Santa Ana sucker.

12. Plaintiffs and their respective members believe that the health of the Santa Ana sucker is representative of the overall health of the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins' remaining aquatic ecosystems and that the dramatic decline of this fish species signals the decline of many other species that also depend on those habitats. Plaintiffs and their respective members believe that adequate protection of Santa Ana sucker habitat will benefit the species as well as the aquatic ecosystem as a whole. Defendants' failure to designate adequate critical habitat for the Santa Ana sucker may lead to extirpation of this fish species, a tragedy in and of itself, and may exacerbate the decline in major portions of the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins' aquatic ecosystems. The failure to designate adequate critical habitat for the Santa Ana sucker will deprive Plaintiffs' members of the recreational, aesthetic, scientific, education, conservation and other benefits.

13. Plaintiffs and their members have been and continue to be actively involved in efforts to protect and restore the health of the habitat of the Santa Ana sucker and the many other species dependent upon that habitat. They have written to various federal and state agencies to urge increased

state and federal protection for the Santa Ana sucker and its habitat. Defendants listed the Santa Ana sucker as a threatened species under the ESA only after CalTrout and AFS California-Nevada specifically petitioned for listing and, when their listing petition went unheeded, filed suit to compel Defendants to comply with mandatory statutory listing deadlines. California Trout, et al. v. Babbitt, et al., No. C 95-3961 SI (N.D. Cal.). Defendants designated critical habitat for the Santa Ana sucker under the ESA only after Plaintiffs challenged Defendants' failure to do so by filing suit to compel Defendants to designate critical habitat as required by the ESA. See California Trout, et al. v. Norton, et al., No. C 97-3779 SI, 2003 WL 23413688 (N.D. Cal. September 30, 2003).

14. The above-described aesthetic, conservation, recreational, scientific, educational, and other interests of Plaintiffs and their respective members have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the failure of Defendants to designate adequate critical habitat for the Santa Ana sucker.

15. The injuries described above are actual, concrete injuries suffered by Plaintiffs and their members. These injuries are caused by Defendants' failure to designate adequate critical habitat for the Santa Ana sucker. The relief sought herein would redress Plaintiffs' injuries. Plaintiffs have no adequate remedy at law.

16. Defendant DIRK KEMPTHORNE is the Secretary of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including proposed and final critical habitat decisions. Secretary Kempthorne is sued in his official capacity.

17. Defendant H. DALE HALL is the Director of the United States Fish and Wildlife Service, an agency within the Department of the Interior and is responsible for the actions of the agency. He has been delegated the responsibility of the Secretary of the Interior described in paragraph 16 above and is sued in his official capacity.

## V. FACTS

### A. Legal Background.

18. Among the purposes of the ESA are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program

for the conservation of such endangered species and threatened species . . ." 16 U.S.C. § 1531(b). To this end, the ESA section 4, requires that the Secretary protect such species by listing them as either "threatened" or "endangered," and by designating "critical habitat" for each listed threatened or endangered species at the time the species is listed. 16 U.S.C. § 1533.

19. "Conserve" and "conservation," as defined in the ESA, "mean to use and the use of all methods and procedures necessary to bring any endangered species or threatened species to the point at which the measures provided [by the ESA] are no longer necessary." ESA § 3(3), 16 U.S.C. § 1532(3).

20. The ESA requires that the Secretary designate areas of critical habitat for endangered species necessary for the conservation of the species in order to provide the habitat necessary to promote recovery of the species such that the protections of the ESA are no longer needed. ESA §§ 4(a)(3)(A), 3(5)(A) and (3), 16 U.S.C. §§ 1533(a)(3)(A), 1532(5)(A) and (3).

21. "Critical habitat" means

> (i) the specific areas within the geographical area occupied by the species at the time it was listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
>
> (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 1533 of this title, upon a determination by the Secretary that such areas are essential for the conservation of the species.

ESA § 3(5)(A), 16 U.S.C. § 1532(5)(A).

22. Section 4(b)(2) of the ESA provides that the Secretary shall designate critical habitat on the basis of the best scientific information available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat. Section 4(b)(2) further provides that some areas may be excluded from designation as critical habitat if the Secretary determines that the benefits of exclusion outweigh the benefits of designation. However, habitat may not be excluded from designation as critical habitat if the "failure to designate such area as critical habitat will result in the extinction of the species concerned." ESA § 4(b)(2), 16 U.S.C. §

1533(b)(2). The Secretary has delegated the authority to designate critical habitat and develop and implement recovery plans to the Director and the Service.

23. Designated critical habitat is protected from destruction or adverse modification pursuant to Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

24. Section 4(f) of the ESA requires Secretary to develop and implement recovery plans for the conservation and survival of endangered and threatened species. ESA § 4(f), 16 U.S.C. § 1533(f). To date, the Secretary has failed to provide a recovery plan for the Santa Ana sucker in violation of the ESA.

**B. The Species and Its Habitat.**

25. Historically, Southern California contained a small and unique collection of freshwater fish adapted to living in its harsh arid conditions. The Santa Ana sucker is one of the few remaining native fish that also has survived the even harsher conditions accompanying modern urbanization in the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins. Even this hardy species, however, is now in grave danger of extinction and is now listed as a threatened species. Santa Ana sucker populations have declined to such low numbers and become so isolated from each other that a single catastrophic event could be sufficient to extirpate local populations and propel the species to extinction.

26. The Santa Ana sucker is a small, olive-gray fish that can be found in clear, cool rocky pools of creeks, as well as along the sandy and muddy bottoms of small, permanent streams with slight to swift currents. Many of these streams are naturally subject to severe flooding which can decimate a resident population. Yet, the Santa Ana sucker possesses adaptations that enable it to repopulate its natal steams rapidly after such unpredictable events, including early maturity, a long spawning period, and the ability to produce many eggs at once. Although the Santa Ana sucker appears to be adaptable to a wide range of riverine habitats, it cannot survive in polluted or highly modified streams.

27. Historically, the Santa Ana sucker was distributed in freshwater streams throughout the uplands and the lowlands of the Los Angeles, San Gabriel, and Santa Ana river drainages. Today, however, its range has been reduced to several isolated populations in the Big Tujunga drainage of the Los Angeles River in the Angeles National Forest, the Santa Clara River, the San Gabriel River, and the

Santa Ana River. Although it is unclear whether or not the Santa Ana sucker was native to the Santa Clara River or was introduced, the population in the Santa Clara River now represents a large portion of the total remaining Santa Ana sucker population and is important to the recovery of the species.

28. Designating and protecting sufficient critical habitat for the Santa Ana sucker is imperative for its continued existence and for its recovery. The Santa Ana sucker's decline is a result of extreme habitat loss, largely associated with the urbanization of the Los Angeles area. Indeed, urban sprawl has eliminated the sucker from the majority of its historic range in the Santa Ana River, the Los Angeles River, and the Santa Clara River Basins. Ongoing threats to the Santa Ana sucker include the serious degradation of water quality accompanying urbanization and industrialization, forest fires, heavy recreational use, loss of natural stream beds, dredging and filling of tributary streams, the disposal of gold mining wastes and gravel extraction, as well as introduced predators and competitors. These threats contribute to the Santa Ana sucker's ongoing decline, with recent data indicating a significant downward trend for the species in the Santa Ana River system.

29. Areas designated as critical habitat for the Santa Ana sucker have important legal protections not otherwise provided by law, including a ban on destruction or adverse modification of such habitat from actions funded, authorized or carried out by federal agencies. See ESA § 7(a)(2),16 U.S.C. § 1536(a)(2). Defendants' failure to include sufficient habitat essential to conserve the Santa Ana sucker and promote recovery of the species in the critical habitat designation undermines the statutory scheme and robs the species of the protections that it should be afforded pursuant to the ESA.

**C. Prior Administrative and Judicial Proceedings.**

30. On September 6, 1994, the Secretary received from plaintiffs CalTrout, AFS California-Nevada, and other organizations a petition to add the Santa Ana sucker and two other species of native fish to the list of threatened or endangered species under the ESA and to designate critical habitat for these three species. See California Trout, et al. v. Norton, et al., Case No. C 97-3779 SI, 2003 WL 23413688, *1 (N.D. Cal. September 30, 2003).

31. After the Secretary failed to make a preliminary determination as to whether the petition presented information that listing of the species may be warranted within the 90 days mandated by section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3)(A), plaintiffs filed suit in this Court to compel

the Secretary to make a preliminary determination, California Trout, et al. v. Babbitt, et al., Civ. No. C 95-3941 SI. Id. On May 14, 1996, this Court found that Defendants had violated the statute and ordered that a preliminary determination on the listing petition be made by June 28, 1996. Id.

32. On March 27, 1997, the Service published its determination that the listing of the Santa Ana sucker was warranted but the Service failed to list the species due to other priorities. See id. In response, Plaintiffs filed a new suit alleging that Defendants' determination violated the ESA and the APA. Id. After several more years of litigation, on April 12, 2000, the Secretary published in the Federal Register a final rule listing the Santa Ana sucker as threatened under the ESA. Id. The final rule stated that critical habitat for this species was "not determinable." Id.

33. The Secretary's finding that critical habitat was not determinable obligated the Secretary to conduct additional research and issue a final determination of critical habitat no later than January 26, 2001. ESA §4(b)(6)(C)(ii), 16 U.S.C. § 1533(b)(6)(C)(ii). Id.

34. The Secretary failed to designate critical habitat within the time required by the statute. Id. at *2. Plaintiffs then provided a 60-day notice and filed a second amended complaint in to compel the Secretary to designate critical habitat. See Id.

35. On February 26, 2003, the Court ordered the Secretary to designate critical habitat for the Santa Ana sucker no later than February 21, 2004, and on September 30, 2003, the Court enjoined the Fish and Wildlife Service from issuing any Section 7 concurrence or biological opinions that would allow a federal action which "may affect" the Santa Ana sucker to proceed until the final critical habitat for the Santa Ana sucker was designated. California Trout, et al. v. Norton, et al., Case No. C 97-3779 SI, 2003 WL 23413688, *3, *5 (N.D. Cal. September 30, 2003).

**D. Critical Habitat Designation and Violations of Law.**

36. On February 26, 2004, the Secretary published the final critical habitat rule for the Santa Ana sucker and made it effective immediately. Endangered and Threatened Wildlife and Plants; Final Rule To Designate Critical Habitat for the Santa Ana Sucker (*Catostomus santaanae*) ("2004 Final Rule"), 69 Fed. Reg. 8839-58, 8842 (February 26, 2004). The Service found that the 2004 Final Rule was exempt from the APA notice and comment procedures. Id. at 8842. The Service dispensed with APA notice and comment procedures in designating critical habitat in order to publish the 2004 Final

Rule as quickly as possible and end this Court's injunction prohibiting the issuance of biological opinions and concurrence letters. See Id. at 8842.

37. Concurrently, the Service published a proposed critical habitat rule and opened a 60-day comment period. Endangered and Threatened Wildlife and Plants; Proposed Rule To Designate Critical Habitat for the Santa Ana Sucker (*Catostomus santaanae*) ("Proposed Rule") 69 Fed. Reg. 8911-15, 8911 (February 26, 2004). The Proposed Rule and the Final rule are the same. Id. at 8912.

38. The 2004 Final Rule designated 21,129 acres of critical habitat in three units along the Santa Ana River, the San Gabriel River, and Big Tujunga Creek and Little Tujunga Creek in the Los Angeles River Basin. 69 Fed. Reg. 8844. The 2004 Final Rule excluded areas of critical habitat within the then-draft Western Riverside Multiple Species Habitat Conservation Plan ("WR MSHCP") and the Santa Ana Sucker Conservation Program ("Conservation Program") from designation as critical habitat under ESA section 4(b)(2), 16 U.S.C. 1533(b)(2). 69 Fed. Reg. at 8846-48.

39. On August 19, 2004, the Service announced it was re-opening a 30-day comment period on the Proposed Rule and the scheduling of public hearings. 69 Fed. Reg. 51416. On October 1, 2004, the Service announced the availability of a draft economic analysis of the Proposed Rule and reopened the public comment period for 10 days. 69 Fed. Reg. 58876-78. The draft economic analysis was not published in the Federal Register. On October, 2004, the Service again re-opened the public comment period for 30 days. 69 Fed. Reg. 62238-40.

40. On January 4, 2005, the Service published a revised final rule designating critical habitat for the Santa Ana sucker. Endangered and Threatened Wildlife and Plants; Final Rule to Designate Critical Habitat for the Santa Ana Sucker (*Catostomus santaanae*); Final Rule ("2005 Final Rule"), 70 Fed. Reg. 426-58 (January 4, 2005). The 2005 Final Rule designated only 8,305 acres of critical habitat for the Santa Ana sucker in two units. 70 Fed. Reg. 437 (Table 1). The 2005 Final Rule did not designate any critical habitat for the Santa Ana sucker in the Santa Ana River or its tributaries. See id.

41. The 2005 Final Rule removed 12,824 acres of the 21,129 acres designated as critical habitat in the 2004 Final Rule, a reduction of over 60 percent. See 70 Fed. Reg. 437 (Table 1). The 2005 Final Rule retained only one unit of critical habitat from the 2004 Final Rule in its entirety; Unit 2 in the upper reaches of the San Gabriel River. See id. The largest of the three critical habitat units

designated in the 2004 Final Rule, consisting of 11,709 acres within Units 1A and 1B along the Santa Ana River and its tributaries in San Bernardino County was entirely eliminated as designated critical habitat in the 2005 Final Rule. See id. The designated critical habitat in the Big Tujunga Creek, Unit 3, in Los Angeles County was reduced by 1,115 acres, representing 30% of the critical habitat previously designated in that unit. See id. The 2005 Final Rule eliminated all critical habitat along the Little Tujunga Creek upstream of its confluence with the Big Tujunga Creek. See id. at 436.

42. In the 2005 Final Rule, the Service improperly excluded habitat that it concluded was essential to the conservation of the Santa Ana sucker and which required special management, that is, habitat which met the statutory definition of critical habitat, ESA §3(5)(A), 16 U.S.C. § 1532(5)(A), from designation as critical habitat for economic reasons under Section 4(b)(2) of the ESA. See 70 Fed. Reg. 441-44. The Service excluded 15,414 acres of both occupied and unoccupied essential habitat for the Santa Ana sucker from designation as critical habitat in the 2005 Final Rule. 70 Fed. Reg. 439. The Service stated that it excluded occupied essential habitat along the Santa Ana River from the final critical habitat designation because it fell within areas covered by the WR MSHCP and the Conservation Program. Id. At the outset, in the 2004 Final Rule/Proposed Rule, the Service had excluded this occupied essential habitat from consideration for designation as critical habitat, although this habitat met the statutory definition because it is habitat that the Service found is essential to the conservation of the Santa Ana sucker and which requires special management as evidenced by the existing special management of these areas pursuant to the then-draft WR MSHCP and the Conservation Program. 69 Fed. Reg. 8839, 8846-48. In the 2005 Final Rule, this occupied essential habitat was again excluded from designation under Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), with the justification that the benefits of excluding the habitat outweighed the benefits of including the areas as designated critical habitat for the Santa Ana sucker. 70 Fed. Reg. 441-42. Despite the Santa Ana sucker's ongoing decline in the Santa Ana River system, the Service asserted that both the WR MSHCP and the Conservation Program will provide adequate special management or protection for the Santa Ana sucker in this area. Id. at 442.

43. The 2005 Final Rule further excluded all other habitat in the Santa Ana River system, including the entirety of Units 1A and 1B in the Santa Ana River and Upper Prado Basin. In the 2004

Final Rule/Proposed Rule, the Service had found these areas were essential for the conservation of the Santa Ana sucker because they: provide and transport the sediment necessary for the Santa Ana sucker to survive downstream; convey steam flows and flood waters necessary to maintain critical habitat for the Santa Ana sucker downstream; protect water quality down stream in occupied habitat; and maintain the natural hydrograph of the river. 69 Fed. Reg. 8839, 8845. Because these areas are not known to be occupied but are essential to the conservation of the species they are critical habitat as defined in ESA section 3(5)(A), 16 U.S.C. § 1532(5)(A). These areas were reportedly excluded due to the last-minute interference of then-Assistant Secretary of the Interior Craig Manson, a non-scientist political appointee, who determined that these areas were not essential to the conservation of the Santa Ana sucker despite the Service's previous determination that these areas were essential to the conservation of the species. The 2005 Final Rule thus improperly excluded from designation as critical habitat areas in the Santa Ana River that are necessary to the survival of the species. Defendants' failure to designate these areas as critical habitat violates the ESA.

44. The ESA requires the Secretary to designate sufficient critical habitat to conserve the species and promote its recovery. ESA §§ 4(a)(3)(A), 3(5)(A) and (3), 16 U.S.C. §§ 1533(a)(3)(A), 1532(3) and (5)(A). The 2005 Final Rule fails to ensure that the designated critical habitat, consisting of 8,305 acres, is sufficient to conserve the species. Because Defendants failed to designate sufficient critical habitat to conserve the species, Defendants violated Section 4(a)(3) of the ESA. 16 U.S.C. § 1533(a)(3) .

45. Under Section 4(b)(2) of the ESA, the Secretary "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned." 16 U.S.C. § 1533(b)(2). Because the failure to designate sufficient critical habitat may result in extinction of the species, Defendants violated the Act by excluding habitat necessary to the survival of the species from the 2005 Final Rule pursuant to Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2).

46. Throughout the process of designating critical habitat for the Santa Ana sucker, the Service relied on a regulatory definition of "destruction or adverse modification" of critical habitat that has been repeatedly declared invalid. See 50 C.F.R. § 402.02. In Gifford Pinchot Task Force v. U.S. Fish & Wildlife Service, 378 F.3d 1059, 1069-70 (9th Cir. 2004), the Ninth Circuit Court of Appeals determined that the regulation improperly eliminated the recovery goal and benefit from critical habitat designation. The Service has, to date, failed to revise the regulation. As a result, Defendants relied on invalid criteria to calculate benefits of critical habitat designation. Defendants failed to properly identify and analyze the benefits of designating critical habitat before weighing the costs and benefits necessary to justify the exclusion of habitat from critical habitat designation pursuant to Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2). Therefore, Defendants acted in violation of Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2).

47. The Service ignored potential benefits to the species that result from designation of critical habitat that are not provided by listing alone. In addition, the Service did not evaluate benefits to other species, ecosystems, and the human environment provided by the potential non-consumptive uses of essential habitat areas that would be enhanced by critical habitat designation, such as protecting water quality, protecting other river dependant species including riparian flora and fauna, protecting soil quality, and protecting open space. The Service also failed to evaluate the potential economic benefits and savings associated with critical habitat designation to public health and local communities. In addition, the Service failed to evaluate the economic benefits and savings that would accrue timely recovery of the species.

48. In assessing the costs of designating critical habitat, the Service improperly aggregated the costs attributable to listing the species and the marginal additional costs attributable to designation of critical habitat. The Service failed to separately evaluate the existing baseline costs associated with and attributable to the listing of the Santa Ana sucker and the costs associated with and attributable to designation of specific areas of habitat as critical habitat. The costs improperly attributed to designation of critical habitat which would be incurred based on listing of the species alone include, but are not limited to, costs of preparing HCPs, costs of complying with the ESA, and costs of complying with local and State regulations regarding endangered species. In assessing the costs of designating

critical habitat, the Service also improperly included economic impacts attributable to: other local and State land use and environmental regulations; speculative costs such as delay, uncertainty, lost economic efficiency; and speculative changes to water supply and flood control operations and management.

49. The Proposed Rule and the Final Rule differ significantly. Section 4(b)(5) of the ESA requires the Secretary to "publish a general notice and the complete text of the proposed regulation in the Federal Register." 16 U.S.C. § 1533(b)(5). Section 533 of the APA requires public notice to include "either the terms or substance of the proposed rule or a description of the subjects and issues involved," and requires the agency to give "interested persons an opportunity to participate in the rule making." 5 U.S.C. §553(b), (c). The 2005 Final Rule excluded over 60% of the essential habitat identified in the Proposed Rule, with the vast majority of the habitat excluded for economic reasons under Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2). Because the Proposed Rule failed to provide notice to the public of the Defendants' intent to exclude the all of the critical habitat in the Santa Ana River from designation as critical habitat for the Santa Ana sucker, Defendants violated the notice provisions of the ESA and the APA.

50. The 2005 Final Rule also improperly excluded from consideration for designation as critical habitat occupied habitat that may be necessary to the survival of the species in the Santa Clara River. The Santa Ana sucker population in the Santa Clara River may be necessary to the survival and recovery of the species. In the 2004 Final Rule, FWS stated that it did not designate any critical habitat for the existing Santa Ana sucker population in the occupied habitat in the Santa Clara River because the Service presumed that the Santa Clara River was not within the native range of the species and that this population was introduced. See 69 Fed. Reg. 8539, 8848. However, the Service acknowledged that "this presumption is based entirely on negative data, and not on a documented record of introduction." Id. Because the Service had not included the Santa Clara River population when it listed the Santa Ana sucker as threatened, the Service refused to consider designating any critical habitat for Santa Ana Sucker population in the Santa Clara River. Id. In the 2004 Final Rule, the Service committed to "further evaluate the role of the Santa Clara River population in the recovery of the species. If the Santa Clara River population is determined to be crucial to the recovery of the species,

we may re-evaluate the status of this population, threats to its conservation, and the status of the population under the Act." Id. In the 2005 Final Rule designating critical habitat for the Santa Ana sucker, the Service again put-off any determination on the Santa Clara River habitat. "If we determine the Santa Clara River population to be crucial to the recovery of the species as we prepare the recovery plan, we many need to reevaluate the status of this population under the Act." 70 Fed. Reg. 426, 429. To date, the Service has failed to provide a recovery plan for the Santa Ana sucker and Plaintiffs are unaware of any efforts by the Service to assess the role of the Santa Clara River population in the recovery of the species. Because the Santa Clara River population and the essential habitat in the Santa Clara River may be necessary to the conservation of the species, Defendants failure to consider designating these areas as critical habitat violated the ESA.

51. The ESA requires development and implementation of a recovery plan for all listed species unless the Secretary "finds that such a plan will not promote conservation of the species." ESA § 4(f), 16 U.S.C. 1533(f). Defendants' ongoing failure to provide a recovery plan for the Santa Ana sucker violates the ESA.

## VI. CLAIM FOR RELIEF

### (Violation of the Endangered Species Act)

52. Each and every allegation set forth in paragraphs 1 through 51 is incorporated herein by reference.

53. Defendants failed to issue a legally sufficient critical habitat designation for the Santa Ana sucker, in violation of Section 3 and Section 4 of the ESA. 16 U.S.C. §§ 1532(5)(A) and 1533(a)(3)(A). Defendants relied on an invalid regulatory definition of adverse modification of critical habitat in concluding that designating critical habitat for the Santa Ana sucker would have little to no benefit for the species, and Defendants' assertion that the economic benefits of designating critical habitat of a listed species are insubstantial is not based on the best scientific data available and is contrary to law. Defendants violations include, but are not limited to: improperly basing their decision on the faulty legal premise that habitat which requires special management should not be designated as critical habitat; failing to rely on the best scientific data available in determining the extent of essential habitat and designating critical habitat; failing to properly consider all occupied and unoccupied habitat

essential to the conservation of the species in making its determination of critical habitat; improperly relying on an invalid regulation; failing to quantify and analyze the economic and other benefits of designating critical habitat for the Santa Ana sucker; improperly attributing costs associated with listing the species and other costs to the designation of critical habitat; improperly including speculative costs; and relying on unsupportable assumptions concerning the economic impacts of such designation. 16 U.S.C. § 1533(b)(2).

54. Defendants failed to provide meaningful public notice of their intent to designate critical habitat as required by law pursuant to the ESA and APA. ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5); 5 U.S.C. § 553(b), (c). The amount of critical habitat described in the Proposed Rule and the amount of critical habitat designated in the 2005 Final Rule differed by over 60%. Plaintiffs and the public were not put on notice or given the opportunity to comment on the exclusion of all of the proposed critical habitat for the Santa Ana sucker in the Santa Ana River and its tributaries under Section 4(b)(2) of the ESA. Accordingly, the final action differed sufficiently from the proposed action that Defendants violated mandatory notice and comment requirements under the ESA and APA for the final critical habitat designation for the Santa Ana sucker.

55. For each of the above reasons, and others, Defendants failed perform their non-discretionary duties as required by the ESA, and have acted in a manner that is arbitrary, capricious, and not in accordance with law. ESA § 11(g), 16 U.S.C. § 1540(g); 5 U.S.C. § 706(2)(A).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

(1) Declare that Defendants Dirk Kempthorne, Secretary of the Interior, and H. Dale Hall, Director of the United States Fish and Wildlife Service, violated the ESA by issuing an inadequate designation of critical habitat for the Santa Ana sucker on January 4, 2005, that fails to provide sufficient critical habitat necessary for conservation of the species and improperly excludes areas from critical habitat that are essential to the conservation of the species;

(2) Direct by injunction that the Secretary and the Director of the Fish and Wildlife Service issue a revised critical habitat designation for the Santa Ana sucker which corrects these errors, and which otherwise provides for the conservation of the species, by a date certain;

(3) In order to protect the species pending the completion of an adequate critical habitat designation for the Santa Ana sucker, enjoin the Secretary of the Interior and the Director of the United States Fish and Wildlife Service from issuing any incidental take permit, approval, biological opinion, or concurrence pursuant to Section 7 of the ESA, for any actions that may harm the Santa Ana sucker or cause adverse modification to Santa Ana sucker habitat within areas of proposed critical habitat that were excluded from designation as critical habitat in the final rule by Defendants pursuant to ESA section 4(b), 16 U.S.C. § 1533(b)(2), or may harm the Santa Ana sucker or cause adverse modification to Santa Ana sucker habitat within the Santa Clara River;

(4) Grant Plaintiffs their fees, costs, expenses and disbursements, including reasonable attorneys' fees; and

(5) Grant Plaintiffs such additional and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of November, 2007,

Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682x307
Fax: (415) 436-9683
Email: lbelenky@biologicaldiversity.org

John Buse (CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue No. 3
Chicago, IL 60637
Telephone: (323) 533-4416
Fax: (610) 885-2187
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiffs
CALIFORNIA TROUT
CALIFORNIA-NEVADA CHAPTER OF THE AMERICAN FISHERIES SOCIETY
CENTER FOR BIOLOGICAL DIVERSITY and
FRIENDS OF THE RIVER